IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMY WARD                                :
                                        :
       v.                               :
                                        :   Civil Action No. CCB-08-3257
ACME PAPER & SUPPLY CO., INC.           :
                                        :

...o0o...

## MEMORANDUM

Now pending before the court are cross motions for summary judgment. Plaintiff Amy Ward has sued Acme Paper & Supply Co., Inc. ("Acme"), alleging discrimination and harassment on the basis of pregnancy, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*.[1] The issues in this case have been fully briefed and no hearing is necessary. For the reasons stated below, Acme's motion will be granted in part and denied in part and Ms. Ward's motion will be denied.

## BACKGROUND

Ms. Ward began working for Acme as its first and only female warehouse employee on May 23, 2005. Warehouse Manager Greg Hinton served as Ms. Ward's direct supervisor. Mr. Hinton reported to Director of Operations Glenn Pollack. Initially, Ms. Ward was assigned to work full-time on the receiving dock. Three months later, Ms. Ward moved to the receiving office in the warehouse, where she scheduled truck deliveries and assigned receiving docks for incoming trucks. After three months, Acme again changed Ms. Ward's job duties and assigned her to work at the back of the warehouse, where she taped up broken supply boxes. About four to six months later, Acme switched Ms. Ward from this full-time assignment to a series of rotating jobs that included

---

[1] 42 U.S.C. § 2000e(k) defines pregnancy discrimination as a form of discrimination on the basis of sex.

sweeping floors, straightening boxes and pallets, taping boxes, and empting trash cans. (*See* Def.'s Summ. J. Mot. Ex. A.) The trash cans weighed approximately 30 to 50 pounds and Ms. Ward spent about 2 hours each work shift emptying them. (*See* Pl.'s Cross Summ. J. Mem. Ex. 5 at ¶ 8.)

On July 14, 2006, Ms. Ward notified Acme that she was pregnant and provided Mr. Pollack with a note from her physician explaining that she should be excused from lifting over 10 to 15 pounds until May 2007. (*See* Def.'s Summ. J. Mot. Ex. B.) Mr. Pollack responded to Ms. Ward's request in a July 26, 2006 memorandum, explaining that "[i]t is the company's policy to accommodate any restrictions an employee may have due to work related injuries." (*See* Def.'s Summ. J. Mot. Ex. C.) Because Ms. Ward's pregnancy was not work-related, Mr. Pollack informed her that Acme would not accommodate the weight-lifting restriction. The memorandum explained "[w]e believe that you must be able to perform functions of a warehouseman," and accordingly, "you are not going to be able to work until all restrictions are eliminated." (*See id.*) Acme placed Ms. Ward on leave and she received disability payments from her union through the end of 2006.

Acme's alleged policy of accommodating only work-related injuries had never been committed to writing prior to the July 26, 2006 memorandum. Further, Ms. Ward maintains that Acme did not firmly abide by its alleged policy. When William Reginald Harvey, III, an Acme warehouse employee, suffered an ankle injury outside of work, his Acme supervisor told him to take time off. (*See* Def.'s Summ. J. Mot. Ex. H at 12-13.) Mr. Hinton testified, however, that he would occasionally accommodate employees who were injured outside of work. (*See* Pl.'s Cross Summ. J. Mot. Ex. 1 at 10-11.) The following exchange took place between Mr. Hinton and Ms. Ward's attorney during the deposition:

> **Q.** Did you know of any instances where an employee got hurt outside of the job and then said, "Hey, I can't do that work; you got anything a little lighter for me"; did those type of situations occur?

> **A.** Rare. It was very rare.
> **Q.** Rare?
> **A.** You don't really see too much like that. It has happened.
> **Q.** Oh, it has happened?
> **A.** It has happened. Someone hurt their hand or, you know, barely could walk around a little bit, messed their knee up, and they come—especially if they come to me and ask me, you know, to take it easy on them for the day, I probably would. I wouldn't, you know, beat them up as bad or give them too much work.
> **Q.** So, in other words, you'd give them some light duty.
> **A.** Something like what won't be strenuous to what, you know, their physical problem was.

(*Id.*) According to Acme, the company never authorized Mr. Hinton's informal accommodations and Mr. Pollack was unaware of any warehouse employee receiving light duty for an out-of-work injury.

Ms. Ward also argues that Acme strayed from its alleged policy by accommodating Tunde Asadju after he underwent knee surgery because of an injury from an out-of-work soccer game. Although Mr. Asadju originally told his supervisor that he would need six weeks off following his surgery, the supervisor asked if he could return to work earlier to help with computer-based data entry. According to Mr. Asadju and Mr. Hinton, this office work was not within Mr. Asadju's regular job duties. Instead, Mr. Asadju usually counted products in the warehouse, either by climbing stacks of inventory or using a cherry picker, and assisted in returning products by physically sorting them. (*See* Pl.'s Cross Summ. J. Mem. Ex. 3 at 6-8.) Mr. Hinton testified at his deposition that Mr. Asadju's job involved physically moving boxes within the warehouse, not handling office work. (*See* Pl.'s Cross Summ. J. Mem. Ex. 1 at 18-19.) Although Mr. Hinton acknowledged that Mr. Asadju once worked as an inventory control employee, he stated that people like Mr. Asadju, who worked in the warehouse, did not perform data entry. (*See id.* at 20-21 (testifying that the computer data entry work "was always transferred over to me or Teron [Kenneth Hollis]").) According to Mr. Hollis, who served as an Inventory Control Manager, however,

processing returns on a computer was part of Mr. Asadju's normal job duties and, therefore, did not constitute a "light duty" job assignment. (*See* Def.'s Summ. J. Mot. Ex. M at ¶¶ 8, 12-13.) Mr. Asadju also stated in his affidavit that he processed returns on a computer as part of his regular job whenever there was a backlog. (*See* Def.'s Summ. J. Mot. Ex. L at ¶ 6.)

In addition, Ms. Ward alleges that after she told Mr. Pollack she was pregnant, he disseminated this information widely among Acme employees. Acme employee David Cheeks approached male employees and congratulated them on being the father of Ms. Ward's baby. Despite Ms. Ward's complaints to her union shop steward, Mr. Cheeks continued this conduct. Ms. Ward never complained about Mr. Cheeks's behavior to any Acme supervisors.

On November 6, 2006, Ms. Ward submitted a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"), alleging that she was discriminated against in violation of Title VII "regarding discharge because of my sex (female/pregnancy)." (Def.'s Summ. J. Mot. Ex. E at 1.) The charge did not mention Mr. Cheeks's comments about Ms. Ward's pregnancy, nor did it use the terms "harassment" or "hostile work environment." Ms. Ward gave birth on February 5, 2007 and resigned from her job on March 3, 2007. On December 4, 2008, Ms. Ward filed suit against Acme, alleging that the company had discriminated against her because of sex and subjected her to a sexually hostile work environment. Both parties now move for summary judgment.

## **ANALYSIS**

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c)(2). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

   A. *Pregnancy Discrimination*

Ms. Ward alleges that Acme discriminated against her on the basis of sex, in violation of Title VII, by refusing to accommodate her pregnancy-related weight-lifting restriction. The crux of a disparate treatment claim is "whether the plaintiff was the victim of intentional discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). Acme argues that it did not

5

intentionally discriminate against Ms. Ward by refusing to accommodate her medical needs because it acted pursuant to a pregnancy-neutral policy of only accommodating employees with work-related injuries. Given that an employer is not obligated to give preferential treatment to pregnant employees, Acme contends that its decision to apply its general accommodation policy to Ms. Ward was non-discriminatory. *See Daugherty v. Genesis Health Ventures of Salisbury, Inc.*, 316 F. Supp. 2d 262, 265 (D. Md. 2004) (holding that "an employer is not required to treat disability arising from pregnancy *more favorably* than it treats other forms of temporary disability") (emphasis in original); *see also Reeves v. Swift Transp. Co.*, 446 F.3d 637, 641 (6th Cir. 2006) (concluding that a company's pregnancy-blind policy could not serve as direct evidence of discrimination); *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 207 (5th Cir. 1998) (noting that "most courts have held that the [Pregnancy Discrimination Act] does not impose an affirmative obligation on employers to grant preferential treatment to pregnant women").

If it were undisputed that Acme had an established and consistently-applied policy of only accommodating employees with work-related injuries, Ms. Ward's claim of disparate treatment would fail. The degree to which Acme's accommodation policy was applied uniformly, however, is in dispute. Ms. Ward argues that the fact the policy was never committed to writing until Acme issued its memorandum on July 26, 2006, left the decision to grant light-duty assignments completely up to managerial discretion. Although Mr. Harvey may have been advised to stay home while recovering from a non-work-related injury, Mr. Asadju was given a light-duty assignment[2] even though he never requested an accommodation. Furthermore, Mr. Hinton testified that, occasionally, he would accommodate employees injured outside of work on an informal basis. (*See*

---

[2] Whether Mr. Asadju's data entry work was a special light-duty assignment, rather than part of his normal work duties, is also disputed. Even if Mr. Asadju did perform data entry work as part of his regular job duties, however, it is uncontested that he did not normally perform this work exclusively. Rather, his job usually entailed some degree of physical work. (*See* Pl.'s Cross Summ. J. Mem. Ex. 3 at 6-8.)

Pl.'s Cross Summ. J. Mot. Ex. 1 at 10-11.) Whether the policy was uniformly applied throughout Acme is a material question of fact that cannot be decided at this stage in the proceedings.

Acme argues, however, that it never provided long-term light duty for an employee with an out-of-work injury and that this fact is undisputed. Thus even if Acme accommodated Mr. Asadju, it did so for only two weeks, rather than the ten months Ms. Ward requested. Yet it is unclear why duration alone would affect Acme's application of its supposedly uniform accommodation policy. A minor accommodation that is needed for a long period of time may be less disruptive to an employer than a shorter-lasting, more substantial accommodation. For example, Ms. Ward points out that accommodating her medical restrictions simply would have entailed assigning her trash-emptying duties to someone else for ten months. This work comprised only two hours of her daily job responsibilities and she was still capable of performing the remainder of her work. Given Mr. Pollack's testimony on how warehouse employees' job responsibilities are constantly in flux and vary each day, temporarily assigning this relatively small portion of Ms. Ward's job to another employee does not seem all that major an accommodation. (*See* Pl.'s Cross Summ. J. Mot. Ex. 4 at 11 (noting that "[e]veryone is hired as a warehouse person and then, as the day goes, you know, and you have different people calling out, not being available for work, I adjust people's daily work according to who is there and what needs to be done").)

Given the disputed testimony regarding the application of Acme's accommodation policy, whether Acme discriminated against Ms. Ward on the basis of her pregnancy cannot be decided as a matter of law. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983) ("courts should [not] treat discrimination differently from other ultimate questions of fact"). Accordingly, the court will deny both parties' motions for summary judgment as to the issue of pregnancy discrimination.

B. *Hostile Work Environment*

Ms. Ward claims that she was subjected to a hostile work environment because "Glenn Pollack went out of his way to point out that plaintiff could not work until all restrictions were lifted" and Mr. Cheeks joked with warehouse employees about them being the father of Ms. Ward's baby. (Pl.'s Cross Summ. J. Mot. at 13.) Acme points out that Ms. Ward failed to include her hostile work environment claim in her EEOC charge, and therefore did not exhaust her administrative remedies. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (noting that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit"). Ms. Ward argues that her hostile work environment claim reasonably relates to the pregnancy discrimination claim she included in the EEOC charge and, therefore, should be considered exhausted.

Even if Ms. Ward's hostile work environment claim reasonably related to the discrimination claim described in her EEOC charge, however, the claim would still fail because the alleged hostile conduct is not sufficiently severe and pervasive. To succeed on a claim for sexual harassment under Title VII, a plaintiff must establish that "the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (*en banc*). In determining whether conduct is sufficiently severe and pervasive, courts look to the "totality of the circumstances," including 1) the frequency of the discriminatory conduct, 2) the severity of the conduct, 3) whether the conduct was

physically threatening, humiliating, or a mere offensive utterance, and 4) whether it unreasonably interferes with an employee's work performance. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998). The plaintiff must show that she "subjectively perceived the environment to be abusive", as well as that "the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." *Equal Employment Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks, citations, and alterations omitted).

The Fourth Circuit has recognized that "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *Id.* For instance, "complaints premised on nothing more than rude treatment by coworkers, ... callous behavior by one's supervisor, ... or a routine difference of opinion and personality conflict with one's supervisor" are not actionable. *Id.* (internal quotation marks, citations, and alterations omitted). In the present case, Mr. Pollack's decision not to accommodate Ms. Ward's weight-lifting restriction, while possibly discriminatory, was too isolated an incident to constitute severe and pervasive conduct. *See Pueschel v. Peters*, 577 F.3d 558, 566 (4th Cir. 2009) (affirming district court's decision that "isolated personnel decisions" were "not actionable" for purposes of a hostile work environment claim because they were not severe or pervasive). Mr. Cheeks's remarks immediately following the news of Ms. Ward's pregnancy were rude and callous, but similarly isolated. *See Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) (finding that even assuming allegations of four gender-based comments were true, they were so "trivial" and "isolated" that they were not severe or pervasive).[3] Because the alleged misconduct was not severe and pervasive, Ms. Ward's hostile work environment claim will be denied.

---

[3] Nor were the remarks reported to a supervisor.

## **CONCLUSION**

For the foregoing reasons, Acme's motion for summary judgment will be granted with respect to the hostile work environment claim and denied with respect to the pregnancy discrimination claim. Ms. Ward's motion for summary judgment will be denied. A separate Order follows.

<u>August  12, 2010</u>                                                   <u>       /s/                             </u>
Date                                                                      Catherine C. Blake
                                                                          United States District Judge